IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE ATLAS and MARGARET SCHWALBACH, | )<br>)<br>) |
| *Plaintiffs,* | )<br>) No. 19 C 3962<br>) |
| v. | ) Judge Virginia M. Kendall<br>) |
| VILLAGE OF GLENCOE, an Illinois Municipal Corporation, | )<br>)<br>) |
| *Defendant.* | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Jane Atlas and her daughter, Margaret Schwalbach claim that Defendant, Village of Glencoe (the "Village"), violated Plaintiffs' constitutional rights by failing to grant an emergency work permit and to provide consideration for an easement in connection with a deteriorating ravine which threatened Ms. Atlas's property. Plaintiffs brought a five-count complaint in state court, alleging two state-law claims (Counts I and II) and three federal claims (Counts III–V). (Dkt. 1). Given the federal claims, the Village removed the case to federal court. (*Id.*). This Court granted the Village's request to delay its answer to the state-law claims pending the resolution of the Village's motion to dismiss the federal claims. (Dkt. 17).

Plaintiffs bring their federal claims against the Village under 42 U.S.C. §§ 1983, 1988, for deprivation of their substantive due process rights (Count III) and

equal protection rights (Count IV and V).  The Village has moved to dismiss these claims, and for the following reasons, the Village's motion is granted.

## **BACKGROUND**

The following factual allegations are taken from Plaintiffs' complaint and are assumed true for purposes of this motion.  *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Ms. Atlas previously owned and resided in a home in the Village (the "residence").  (Dkt. 11-1 ¶ 6).  The residence was situated on property Ms. Atlas owned.  (*Id.*)  The residence overlooked and was adjacent to a ravine, part of which was within the boundaries of Ms. Atlas's property.  (*Id.* ¶ 7).

The Village constructed stormwater management facilities designed to empty stormwater from the Village streets and surrounding areas into a stream at the bottom of the ravine. (*Id.* ¶¶ 10, 11).  At some point before May 2017, the Village became aware that a portion of the stormwater system near the residence had been damaged and had, in part, collapsed.  (*Id.* ¶ 12).  The collapsed drain and damaged system caused stormwater to jet toward the slope of the ravine on Ms. Atlas's property, causing erosion which "undermine[d] the stability" of the ravine.  (*Id.* ¶¶ 13, 15, 16).  The Village, however, did not inform Ms. Atlas of the damaged system, and as of Spring 2018, the Village had still not repaired it.  (*Id.* ¶¶ 14–15).

In early May 2018, Ms. Atlas listed her residence and property for sale, and, on May 14, 2018, she signed a contract with a purchaser to sell the residence and property for $527,000.  (*Id.* ¶¶ 8, 9).  On May 21, 2018, heavy rains led to significant

erosion of the ravine on Ms. Atlas's property. (*Id.* ¶ 16). On May 22, 2018, a home inspection by the purchaser revealed the significant erosion of the ravine and that the erosion had undermined the foundation of the residence. (*Id.* ¶ 17). The contract was cancelled immediately, as was the listing. (*Id.* ¶¶ 18, 19). Ms. Atlas contacted several expert consultants, who determined that the erosion was due to the damaged stormwater system and collapsed drain. (*Id.* ¶ 20).

On May 30, 2018, Ms. Atlas, Ms. Schwalbach, and David Mau, the Village Director of Public Works, met at Ms. Atlas's property. (*Id.* ¶ 21). Mr. Mau indicated the Village would address the defect and would seek an easement from Ms. Atlas to access the ravine. (*Id.* ¶ 21). On June 26, 2018, Ms. Atlas and Ms. Schwalbach met with Mr. Mau and Village Engineer, Anna Kesler, at the Village Hall regarding the damage to the ravine and the residence. (*Id.* ¶ 22). Mr. Mau and Ms. Kesler told Ms. Atlas and Ms. Schwalbach that the Village had been aware of the problem for some time and that funds had been approved to make necessary repairs to the damaged system. (*Id.* ¶ 22). Ms. Atlas requested Village assistance in addressing the damage. (*Id.* ¶ 23). The Village offered no specific assistance but again requested an easement on Ms. Atlas's property to perform repairs. (*Id.* ¶ 23). In response, Ms. Atlas asked the Village to stabilize the part of the ravine on her property. (*Id.* ¶ 24). The Village declined, stating that it would not offer her consideration for the easement and that its repairs would be limited to the immediate area surrounding the damaged part of the system and the collapsed drain. (*Id.* ¶ 24).

Heavy rains continued to cause damage to the ravine and the residence, and on June 27, 2018, Ms. Schwalbach discovered a crack in the foundation of the residence. (*Id.* ¶¶ 25, 26). On June 29, 2018, both Mr. Mau and Ms. Kesler observed the damage to the residence and property. (*Id.* ¶ 27). The next day, Mr. Mau acknowledged that, to prevent further damage, Ms. Atlas would need to undertake temporary shoring of the ravine on her property. (*Id.* ¶ 28). Mr. Mau, however, did not state what, if anything, the Village would do to repair the damage caused by the stormwater system. (*Id.* ¶ 28).

On July 19, 2018, Ms. Atlas and Ms. Schwalbach appeared before the Village Board of Trustees seeking assistance in correcting the problems with the property and residence. (*Id.* ¶¶ 29–30). At the meeting, Ms. Atlas and Ms. Schwalbach openly criticized the Village and its staff for their lack of responsiveness to the damage caused to Ms. Atlas's residence and property. (*Id.* ¶¶ 29–30). After the meeting, the Village again asked Ms. Atlas about the easement, but still did not offer her any consideration. (*Id.* ¶ 32). Nor did the Village take any action to repair the damaged system or to stabilize Ms. Atlas's property. (*Id.* ¶ 32).

Deterioration of the ravine, property, and residence continued, and Plaintiffs were forced to vacate. (*Id.* ¶ 34). At that point, Ms. Atlas contracted to have emergency shoring work done. (*Id.* ¶ 35). On July 26, 2018, Ms. Atlas told Ms. Kesler about the emergency work and Ms. Kesler gave Ms. Atlas a permit form for the emergency work and a copy of the Village's Steep Slope Regulations, "promising that the Village would expedite any permit review for the [e]mergency [w]ork." (*Id.* ¶ 36).

On August 2, 2018, Ms. Atlas filed the emergency permit application and contractors began work on her property. (*Id.* ¶ 37). But the work was short lived—instead of processing the permit, the Village placed a stop work order on the shoring. (*Id.* ¶ 38). The Village required that Ms. Atlas supplement the emergency application with information she asserts is typically required only for a non-emergency application. (*Id.* ¶ 42). Still, the Village sought an easement yet declined to provide consideration for it. (*Id.* ¶ 39). Without the necessary work on the ravine, damage to Ms. Atlas's property continued. (*Id.* ¶ 40).

In mid-August 2018, Ms. Atlas and Ms. Schwalbach attended yet another Village Board meeting, again publicly criticizing the Village, this time publicly calling the Village Manager a liar when he claimed no knowledge of the emergency shoring work. (*Id.* ¶ 41).

By September 2018, Ms. Atlas still had not received a permit to conduct the shoring work. (*Id.* ¶ 46). Lacking sufficient funds to continue pursuing repair of her property, on October 5, 2018, Ms. Atlas accepted a contract to sell the property to a company specializing in distressed property for $217,775, a substantial reduction from the May offer price of $527,000. (*Id.* ¶ 9, 48). On October 8, 2018, the Village issued the permit for the emergency work. (*Id.* ¶ 49).

## **LEGAL STANDARD**

The Village moves to dismiss Ms. Schwalbach for lack of standing, an argument properly made pursuant to Federal Rule of Civil Procedure 12(b)(1). In reviewing a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the

plaintiff must carry her burden of establishing that jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). To determine whether jurisdiction exists, the Court turns to the complaint along with evidence outside of the pleadings. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). A court lacking subject-matter jurisdiction must dismiss the action without proceeding to the merits. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019).

The Village also moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## **DISCUSSION**

The Village's Motion to Dismiss addresses solely the federal claims: Count III (due process claim) and Counts IV and V (equal protection claims). The Village also

contests Ms. Schwalbach's standing. Plaintiffs concede most of the Village's argument; they concede that Ms. Schwalbach does not have standing, and they have chosen not to contest the dismissal of Counts III and V.

### A. Standing

The Village argues that Ms. Schwalbach lacks standing because she has not suffered any injury. Specifically, the Village notes that Ms. Schwalbach did not own the property at issue; Ms. Atlas was the owner. *See McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*, 937 F.3d 1056, 1063 (7th Cir. 2019) (noting that standing requires "(1) a concrete and particularized injury in fact that is (2) fairly traceable to the alleged action of the defendant and (3) likely to be redressed by a favorable decision"). Ms. Schwalbach concedes that she does not have standing to bring the claims at issue—her mother was the sole owner of the property and was the person who suffered the injury, namely the economic consequences. (Dkt. 18 at 5 n.1). Counts III–V as brought by Ms. Schwalbach, are therefore dismissed.

### B. Due Process Claim

Plaintiffs allege in Count III that the Village violated their rights to due process, asserted through § 1983. Plaintiffs do not expressly state what right was interfered with, but it appears to be Ms. Atlas's property right to the emergency work permit. Ms. Atlas does not invoke a fundamental right, and so the Village need only show that its action was "rationally related to a legitimate government interest." *Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 874 (7th Cir. 2019).

"This is a lenient standard, and laws challenged under rational-basis review carry a strong presumption of validity." *Id.* (internal quotation marks omitted).

The Village argues both that Ms. Atlas did not have a property right to the emergency work permit and that Ms. Atlas has not sufficiently alleged that there was no rational basis for the Village's actions. While Plaintiffs dispute whether the Village had a rational basis for its actions, they have chosen not to contest the dismissal of Count III. (Dkt. 18 at 5 n.1). Count III is therefore dismissed.

**C. Equal Protection Claims**

Plaintiffs allege in Counts IV and V violations of Ms. Atlas's right to equal protection, asserted through § 1983. The Equal Protection Clause of the Fourteenth Amendment directs that similarly situated individuals be treated alike under the law. *See St. Joan Antida High Sch. Inc. v. Milwaukee Pub. Sch. Dist.*, 919 F.3d 1003, 1008 (7th Cir. 2019). Where the state action involves a suspect class, such as race, strict scrutiny applies. *Id.* Otherwise, rational basis review applies. *Id.*

Here, Ms. Atlas does not advance a claim based on a suspect classification. Instead, she advances a "class-of-one" theory. "The core idea behind a class-of-one claim is that the equal-protection guarantee 'protect[s] individuals against purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes.'" *Paramount Media Grp., Inc. v. Vill. of Bellwood*, 929 F.3d 914, 920 (7th Cir. 2019) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012)). "The classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for

his action other than spite or some other improper motive. . . comes down hard on a hapless private citizen.'" *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013) (quoting *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir.2005)). Courts apply rational basis review to class-of-one claims. *Paramount*, 929 F.3d 914, 920 (7th Cir. 2019).

The crux of Ms. Atlas's class-of-one argument is that the Village singled her out and exhibited animus towards her because she was openly critical of the Village and how it handled the damaged system. As a result of this animus, Ms. Atlas alleges, the Village prevented her from timely obtaining an emergency work permit (Count IV) and refused to offer her consideration for an easement onto her property to fix the damaged system (Count V). Plaintiffs do not contest the dismissal of Count V (Dkt. 18 at 5 n.1), so that count is dismissed.

Only Count IV remains, as asserted by Ms. Atlas. Although the standard for a class-of-one equal protection claim is currently unsettled in this circuit, *see Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc) (5-5 division resulting in no controlling opinion), at a minimum, to state such a claim, Ms. Atlas must allege that she was: (1) "intentionally treated differently from others similarly situated"; and (2) "there is no rational basis for the difference in treatment." *Forgue v. City of Chicago*, 873 F.3d 962, 968 (7th Cir. 2017) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601–02 (2008)).

Turning to the first element, a plaintiff may make the showing of different treatment by pointing to similarly situated individuals who are "identical or directly comparable to the plaintiff in all material respects." *Reget v. City of La Crosse*, 595

F.3d 691, 695 (7th Cir. 2010); *see also Swanson*, 719 F.3d at 784 ("In most class-of-one cases, the comparison of similarly situated individuals will be used to infer animus."). "Whether a comparator is similarly situated is usually a question for the fact-finder," however, it is appropriate to dismiss a class-of-one claim at the pleading stage if the plaintiff fails to allege that it was similarly situated to any comparators. *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). Here, Plaintiffs have not identified any similarly situated comparator. They allege only that "the Village has routinely allowed residents to take emergency measures to protect their homes and properties following significant damage either without a permit or upon delivery of significantly less information than is typically required for a standard permit" and that "[s]uch measures have included tarping roofs, boarding windows and doors, and similar activities." (Dkt. 11-1 ¶ 72). These activities are not analogous to conducting structural work on a collapsing ravine. Plaintiffs have failed to point to any other individuals who are in a directly comparable position to Ms. Atlas, and have failed to satisfy the required showing of a similarly situated individual.

In some cases, animus is so obvious, and the alleged actions are so egregious that a similarly situated comparator need not be identified to show that the plaintiff was treated differently. *See, e.g., Swanson*, 719 F.3d at 784 (where plaintiff showed that town mayor bore ill will against the plaintiff, including allegations that the mayor instigated a prosecution against him and accused him of being a drug dealer, plaintiff did not need to present similarly situated comparators); *Geinosky*, 675 F.3d

at 748 (plaintiff did not need to show similarly situated comparator when officers issued him twenty-four bogus parking tickets clearly showing animus). The facts of this case, however, are not so egregious as to negate the requirement to show a similarly situated comparator—Ms. Atlas alleges no direct evidence of hostility or animus on the part of Village actors.

Count IV also fails on the second element—that there is no rational basis for the Village's action. A sufficient rational basis "does not have to be the one lawmakers actually had in mind; it is enough that the basis is conceivable or imaginable." *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 826 (7th Cir. 2019). "Once we identify a plausible basis for the legislation, our inquiry is at its end." *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1071 (7th Cir. 2013).

Article XV of the Village Code pertains to Steep Slope Regulations. (Dkt. 11-2). Section 9-116 of Article XV provides for certain plans and reports that must be submitted prior to issuance of a permit for work on a slope impact area, including designs created by engineers, subsoil investigations, a geotechnical stability analysis, and more. *Id.* Section 9-117(d) of Article XV provides for emergency activity as follows:

> (d) *Emergency activities.* Nothing in this article shall prevent the village from permitting development activities on an emergency basis when deemed necessary by the Director to remediate an unstable or insecure slope that presents an immediate threat to health, safety, and welfare, or stability of an authorized building.
>
>> (1) Emergency development activity (including installation or construction of structures) shall only be permitted provided that the remedial action involves the least possible disruption of the

> natural features of the site as possible and is in conformance with the standards and policies of this article.
>
> (2) Emergency development activity (including installation or construction of structures) shall only be permitted to provide remedial action that is the most reasonable action to address the emergency situation under the circumstances.

(Dkt. 11-2). Plaintiffs argue that it is an irrational and arbitrary reading and application of § 9-117(d) to allow the Village to require all the standard plans and reports even in an emergency situation, and that such a requirement would render § 9-117(d) useless. Yet, § 9-117(d) is written in permissive language, emergency activities are permitted "*when deemed necessary*" and, even then, only when emergency development activity is "in conformance with the standards and policies" of Article XV, which includes the requirements set forth in § 9-116 which Ms. Atlas was asked to comply with, at least in part (she does not elaborate on what supplemental information she was asked to provide, just that it was typically required in non-emergency situations). (Dkt. 11-2 (emphasis added)).

The Village's actions were in line with Article XV, and, on its face, Article XV provides a rational basis for these actions. The statement of purpose for the article at § 9-111(a) provides that the purpose of the article is to protect "public health, safety, and welfare," including by "encouraging appropriate engineering technology to result in stable slopes" and "encouraging building techniques that increase slope stability." (Dkt. 11-2). Further, § 9-117 itself provides that its goal is to "provide for long-term slope stability" to avoid adversely impacting "neighboring properties." (Dkt. 11-2). These are legitimate, rational bases for the Village's actions here,

including its request for additional information before issuing the permit, in line with § 9-117(d). For this additional reason Count IV must be dismissed.

## **CONCLUSION**

Plaintiffs have failed to state a claim under federal law. The Village's motion to dismiss is therefore granted. Counts III–V, as brought by Ms. Schwalbach, are dismissed for lack of standing. Counts III and V, as brought by Ms. Atlas, for which Plaintiffs have not contested dismissal, are dismissed with prejudice. Count IV, as brought by Ms. Atlas, is dismissed without prejudice. The Court grants Ms. Atlas leave to amend her complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion. If Plaintiffs choose not to amend the complaint or otherwise fail to state a federal claim, the Court will decline to exercise supplemental jurisdiction over the state-law claims and the case will be remanded back to state court. *See* 28 U.S.C. § 1367(c)(3).

_____
Virginia M. Kendall
United States District Judge

Date: November 18, 2019